# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4883 | **DATE** | 11/18/2004 |
| **CASE TITLE** | John J. Davit vs. Cathy C. Davit, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Defendant Glimco's motion to dismiss amended complaint [14-1], the Defendant-Judges motion to dismiss amended complaint [43-1], and the Village of Lisle's motion to dismiss amended complaint [44-1] are GRANTED. Plaintiff, John J. Davit's suit is dismissed under Fed.R.Civ.P. 12(b)(l) for lack of subject-matter jurisdiction. *See Frederiksen v. City of Lockport,* 384 F.3d 437, 439 (7th Cir. 2004). To the extent that Davit's twenty-nine page collective pleading might state some alleged wrongs that do not implicate the *Rooker-Feldman* doctrine, Davit's RICO claims are defective as a matter of law for multiple, independent reasons, and Davit's claims against Judge Equi and Judge Jerz are also dismissed independently under the doctrine of absolute judicial immunity.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

NOV 2 2 2004
date docketed

docketing deputy initials

date mailed notice

**Document Number**

70

TBK

courtroom deputy's initials

U.S. DISTRICT COURT

2004 NOV 18 PM 3:47

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN J. DAVIT,           )
          )
    Plaintiff,       )
          )
    v.            )    Case No. 03 C 4883
          )
CATHY C. DAVIT,      )    Hon. Mark Filip
ATTORNEY WILLIAM J.   )
STOGSDILL, JR,       )
ATTORNEY JOSEPH GLIMCO, III, )
JUDGE RODNEY EQUI,   )
JUDGE JAMES JERZ,    )
LISLE POLICE DEPARTMENT,  )
          )
    Defendants.     )

DOCKETED

NOV 2 2 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff John J. Davit ("Plaintiff" or Davit") filed a *pro se* complaint in this matter. In it,

Davit alleges that *pro se* defendant Cathy Davit, Plaintiff's former spouse; Judges Rodney Equi

and James Jerz ("Defendant-Judges"), two Illinois State court judges who presided over Davit's

divorce proceedings and/or civil enforcement and criminal proceedings that were instituted

against Davit in connection with the divorce proceedings; William Stogsdill, Jr. ("Stogsdill"), the

attorney who represented Cathy Davit in the divorce proceedings; Joseph Glimco III ("Glimco"),

Davit's former attorney who represented Davit in the divorce proceedings; and the Village of

Lisle conspired together against Davit in violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*[1]

Three motions are presently before the Court. Glimco (D.E. 41), the Defendant-Judges

---

[1]     The Village of Lisle has indicated that it was improperly named as the "Lisle Police Department" in Davit's complaint.



(D.E. 43), and the Village of Lisle (D.E. 44) move this Court under Federal Rule of Civil Procedure 12(b)(1) to dismiss Davit's claims on the grounds that this Court does not have subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Davit's First Amended Complaint (D.E. 38) fails to state claims upon which relief can be granted. For the following reasons, these motions are granted.

As set forth more fully below, Davit brought this suit in this Court after several years of contentious and what appears to be ongoing family law litigation (and related civil enforcement and criminal litigation against Davit) in the Circuit Court of DuPage County, Illinois, concerning Davit and his former spouse, Defendant Cathy Davit.[2] Davit alleges that various individuals

---

[2] The Court recognizes Davit's *pro se* status and has construed his pleadings—which at times are distinguished more for their invective than their clarity—liberally. On April 26, 2004, Davit filed an amended complaint that "reaffirm[ed] the initial complaint of July 15, 2003, and add[ed] the additional statement . . . from the Amended Complaint." (Pl.'s Am. Compl. at Law (D.E. 38) at 17.) The Court, as it must for purposes of resolving Defendants' motions, accepts all well-pleaded allegations in these two pleadings as true.

Davit also filed with the Court an "affidavit" and several addendums to that affidavit that are apparently intended by Davit to update this Court on the status of Davit's state court proceedings. (*See* D.E. 55, 56, 61, 63, 68, 69.) For instance, Davit indicates that on January 26, 2004, he was ordered to appear in front of Judge Kenneth Popejoy for violating a protective order, which appearance was then continued to July 21, 2004, in front of Judge Brian McKillip, one of the few judges that had not presided over any of Davit's proceedings in the Circuit Court of DuPage County. (*See* D.E. 55 at 1-3.) Davit contends that this rescheduling was an attempt by the DuPage County judges to evade RICO liability in that any ruling against Davit by Judge McKillip would "only be his first violation against the Plaintiff, and not subject to RICO Act accusations, since all judges are allowed one per case in every 4 years." (*Id.* at 4.) Davit also informed the Court that he received notice from the Illinois Department of Public Aid that he is in arrears with respect to child support payments in the amount of $43,462.27, and Davit contends that this amount "clearly places [him] in a felony status of child-support delinquency level, opening the door for possible felony incarceration . . . ." (D.E. 56 at 1-2.) Davit disputes the amount of child support he owes, alleges that the child support payments are part of the RICO conspiracy against him, contends that the notice of arrears was in retaliation for filing suit against the Defendants, and takes issue with being "continually incarcerated" for his failure to pay child support and what are apparently obligations to obtain health insurance for his children. (*See id.* at 2-3; *see also* D.E. 38 at "Count 6," ¶ 1).) Davit's subsequent addendums also take issue with

involved in this litigation were engaging in racketeering against him. (D.E. 38 at 17.) Davit has

brought the present suit against several individuals connected to Davit's divorce proceedings,

claiming various violations of the RICO statute as a result of rulings and events in these

proceedings that were apparently unfavorable to Davit.[3]

## BACKGROUND

In September of 1996, Davit's wife, Defendant Cathy Davit, informed him that they were

falling behind on their household bills and mortgage. (Compl. (D.E. 1) at 2.) Based on his

wife's representations, Davit, who was not involved in household finances at this time, began to

draw $1000 a month from a corporation that Davit had started to cover their personal expenses.

---

criminal charges apparently filed against Davit for violating an order of protection and for
resisting arrest in connection with a warrant that was issued for his failure to pay child support.
(*See* D.E. 61 at 1-5.) Davit also contends that two state prosecutors and his public defenders
entered into the alleged RICO conspiracy against him, which resulted in a twelve person jury of
his peers finding Davit guilty of violating the order of protection and resisting arrest. (*Id.* at 8,
15-16.) He contends "that there exist[s] an anarchy government of chaos in [the] DuPage County
Court System." (D.E. 68 at 6.) In Davit's most recent update, he alleges that the office of Joseph
Birkett, the DuPage County State's Attorney, has joined the RICO conspiracy against him,
because that office has initiated proceedings to collect delinquent child support payments from
Davit. (D.E. 69 at 2-3.) Davit contends that, among others, "Rick Haas" will testify in support
of Davit's RICO claims. (D.E. 61 at 19.) (The Court notes that Judge Norgle recently dismissed
a suit by "Richard Hass," a disgruntled divorce litigant, who also alleged RICO violations in
connection with the DuPage County courts. *See Hass v. RICO Enterp.*, No. 03-8695, 2004 WL
1336255, at *1 (N.D. Ill. June 14, 2004). Judge Norgle, in the course of imposing Rule 11
sanctions against Hass, repeatedly characterized Hass's complaint (which were similar in at least
some respects to Davit's) as "completely baseless," "frivolous," "objectively meritless," and
"scandalous." *Hass v. RICO Enterp.*, No. 03-8695, 2004 WL 1385837, at *5-*6 (N.D. Ill. June
18, 2004).)

[3] On August 2, 2004, Davit moved to amend his complaint to add as defendants the entire
"DuPage County Court System and its' [sic] departments and affiliations" as well as Illinois state
court judges for DuPage County "Brian McKillup [sic], George DeSoto [sic], Kenneth Popejoy,
Kenneth Abraham, Elizabeth Sexton, and others . . . ." (D.E. 62 at 1.) The Court denied that
motion without prejudice. (D.E. 67.)

(*Id.*) Davit alleges that Cathy Davit's representations concerning their finances were lies—according to Davit, their combined income was sufficient to cover their bills and mortgage, making the withdrawal of $1000 per month unnecessary. (D.E. 38 at 4.) Whatever the state of the Davits' finances, the bank that held the mortgage on their marital residence sent Davit a notice of foreclosure in August 1997 that indicated that the bank would be foreclosing as a consequence of the couple not making mortgage payments. (D.E. 1 at 2.)

Davit contends that Cathy Davit's representation to Davit about the state of their financial affairs and her failure to make timely mortgage payments were either precursors or part of what Davit alleges is a sprawling RICO conspiracy against him related to his divorce that has resulted in the "complete collapse of [his] business, all personal family expectations, [his] career[,] and [his] personal financial ruin." (*Id.* at 2.) Specifically, Davit alleges that Cathy Davit misrepresented their financial situation to Davit so that she could acquire funds from Davit's corporation. (*Id.* at 3.) According to Davit, Cathy Davit devised this plan with her neighbors and close friends, and the plan called for her intentional failure to make mortgage payments on their marital residence. (*Id.* at 2.) Davit also makes the counterintuitive allegation (given Cathy Davit's purported intentional non-payment of the couple's mortgage) that Cathy Davit schemed to acquire their marital residence for herself. (D.E. 38 at 5.)

The circumstances surrounding the foreclosure raised "red-flags" for Davit, and he began considering divorcing Cathy Davit. (D.E. 1 at 2.) Davit ultimately concluded that Cathy Davit was deceiving him, and on February 7, 1998, Davit initiated divorce proceedings against her in the Circuit Court of DuPage County, Illinois. (*Id.*) Cathy Davit hired Stogsdill's law firm to represent her in the divorce proceedings. (*Id.*) She did so, Davit alleges, in an attempt to cover

4

up her criminal intentions. (*Id.*) In this regard, Davit contends that Cathy Davit and Stogsdill conspired to "cover their crimes of fraud, theft, and forgeries to acquire and extort mon[ey] and propert[y] from [Davit]." (*Id.*) Davit further contends that, as part of this conspiracy, Stogsdill falsely claimed during the divorce proceedings that Davit was hiding two million dollars from Cathy Davit, which false claim resulted in the judges involved in Davit's divorce proceedings "wrongfully rul[ing] against [Davit] . . . [in the] divorce case in hopes of acquiring the [two million dollars] for themselves." (D.E. 1 at 2-3.)

I.    RICO Claims Against the Defendants

Davit's allegations against the Defendants in this case span twenty-nine pages of pleading (eighteen pages of his amended complaint which "reaffirms" the eleven pages of his original complaint). The Court has done its best to decipher the often disjointed and confusing allegations contained in these pages, keeping in mind Davit is proceeding *pro se*.

A.    Claims Against Defendant Cathy Davit

Davit attempts to assert the following claims against Cathy Davit under the RICO statute. First, Davit contends that his former wife conspired with Stogsdill and Glimco, among others, to misrepresent Davit's financial situation to both Davit and the Circuit Court of DuPage County. (D.E. 38 at 4.) Davit claims that Cathy Davit also conspired with Stogsdill and the other named defendants to "intentially [sic] and [with] malice [and] intent[] continually mismanage household finances, and continually disregard balancing the household checking account" in purported violation of 18 U.S.C. § 1951, a federal statute that criminalizes the interference with interstate commerce by threats or violence. (*Id.* at 4-5.) Davit also contends that Cathy Davit conspired with the other Defendants to commit fraud so that she could obtain the marital residence in

5

violation of 18 U.S.C. § 1957, a federal statute that criminalizes engaging in monetary transactions in property derived from specified unlawful activity. (*Id.* at 5.)

      B.     Claims Against Defendant Stogsdill

Davit attempts to assert the following claims against Stogsdill under the RICO statute. Davit alleges that Stogsdill caused or contributed to Davit's termination from his employment at Scanwell Freight Express Corporation and United Parcel Service in violation of 18 U.S.C. §§ 1512 and 1513, federal statutes that criminalize tampering with and retaliating against witnesses, victims, or informants. (D.E. 38 at 6) Davit also alleges that Stogsdill allowed Cathy Davit to achieve "illegal rights" to the marital residence, child support, and maintenance in violation of 18 U.S.C. §§ 1951 and 1952, federal statutes that criminalize (1) the interference with interstate commerce by threats or violence and (2) interstate and foreign travel or transportation in aid of a racketeering enterprise, respectively. (*Id.*) Davit further alleges that Stogsdill extorted lawyers' fees from Davit by "receiving an illegal judicial ruling from Judge Equi allowing 'maintenance' payments" in violation of 750 ILCS § 25/10, a Illinois state statute that provides for certain procedures in an expedited child support hearing where a responding party fails to appear. (*Id.* at 7.) This "illegal" ruling, Davit alleges, was for the sole purpose to allow Stogsdill to accumulate attorneys' fees over the course of Davit's six-year-long divorce proceeding, which accumulation of fees resulted in violations of 18 U.S.C. §§ 1503, 1513, 1951, 1952, and 1956. (*Id.*) Davit also alleges that Stogsdill violated "750 ILCS § 25/20" (the Court was unable to find such a statute) by "continuing to collect . . . fees under the child-support program . . . ." (*Id.*) Davit also apparently contends that Stogsdill's "collection" of child support payments from Davit violated 18 U.S.C. §§ 1511, 1513, 1951, and 1952. (*Id.* at 8.) Davit further alleges that Stogsdill

conspired with various DuPage County judges to have Davit "illegally incarcerated" (*id.*)—an apparent reference to Davit's having been incarcerated in connection with a criminal conviction for violating an order of protection and resisting arrest and/or repeatedly incarcerated in connection with contempt proceedings for failure to pay child support and health insurance obligations.

    C.    Claims Against Defendant Village of Lisle

Davit attempts to assert the following claims against the Village of Lisle under the RICO statute. Davit contends that "the Lisle Police [D]epartment . . . knowingly abuse[d] [its] position as a[] guardian of its citizen and resident of Lisle in [Davit's] effort to secure proper police help [a]gainst crimes committed against him during his divorce proceeding." (D.E. 1 at 6.) Specifically, Davit alleges that the Lisle Police Department (1) falsified a police report with respect to an assault and battery charge (D.E. 38 at 10); (2) failed to investigate Davit's claim of forgery (D.E. 1 at 6); and (3) refused to cooperate with Davit or investigate Davit's criminal allegations (D.E. 38 at 10). These acts and omissions, Davit contends, are in violation of 18 U.S.C. § 1503, a federal statute that criminalizes influencing or injuring a federal judicial officer or juror; 18 U.S.C. § 1510, a federal statute that criminalizes the obstruction of federal criminal investigations; 18 U.S.C. § 1511, a federal statute that criminalizes the obstruction of state or local law enforcement officials with the intent to facilitate an illegal gambling business; and 18 U.S.C. § 1512, a federal statute that criminalizes tampering with witnesses, victims, or informants in connection with federal proceedings and federal criminal investigations. (D.E. 38 at 11.)

D.     Claims Against Defendant Glimco

Davit attempts to assert the following claims against Defendant Glimco under the RICO statute. Davit alleges Glimco, a former employee of Stogsdill's law firm, and the attorney that represented Davit in the divorce proceedings, "falsely represented [Davit] . . . and aid[ed] in . . . [the] extortion and racketeering plan . . . ." (D.E. 1 at 7.) Davit appears to take issue with the manner in which Glimco represented him in the divorce proceedings, alleging that (1) Glimco would not present certain evidence in opposition to Cathy Davit's claims and arguments; (2) Glimco did not pursue or investigate Davit's claims regarding a purported forgery; (3) Glimco did not pursue a purported attack on Davit's son as evidence in the divorce proceedings against Cathy Davit; and (4) Glimco misrepresented Davit's financial situation to the state court during the divorce proceedings. (D.E. 1 at 7.) Davit also alleges that Glimco aided in Stogsdill's extortion and racketeering in an attempt to acquire two million dollars from Davit. (*Id.* at 7-8.) Davit contends that Glimco violated 18 U.S.C. § 1503, a federal statute that criminalizes the influencing or injuring of an officer of a federal court or juror. (D.E. 38 at 12.)

E.     Claims Against Defendant Judge Equi

Davit attempts to assert the following claims against Judge Equi under the RICO statute. Davit contends that Judge Equi conspired with the other Defendants "to identify and collect a sum of $2,000,000" from Davit. (D.E. 38 at 13.) Judge Equi also allegedly "look[ed] the other way on incriminating evidence" and "destroy[ed] all were-withal [sic]. . . of Davit . . . through . . . illegal judicial court rulings based on false charges." (*Id.*) Davit alleges that, throughout Davit's divorce proceedings, Judge Equi violated 18 U.S.C. § 1502, a federal statute that criminalizes resisting an extradition agent of the United States; 18 U.S.C. § 1503, a federal

statute that criminalizes influencing or injuring a juror or an officer of a federal court; 18 U.S.C. § 1510, a federal statute that criminalizes the obstruction of federal criminal investigations; 18 U.S.C. § 1511, a federal statute that criminalizes the obstruction of state or local law enforcement with the intent to facilitate an illegal gambling business; 18 U.S.C. § 1512, a federal statute that criminalizes tampering with a witness, victim, or informant; 18 U.S.C. § 1513, a federal statute that criminalizes retaliating against a witness, victim, or an informant; 18 U.S.C. § 1951, a federal statute that criminalizes interference with interstate commerce by threats or violence; 18 U.S.C. § 1952, a federal statute that criminalizes interstate and foreign travel or transportation in aid of a racketeering enterprise; and 18 U.S.C. § 1956, a federal statute that criminalizes the laundering of monetary instruments. (D.E. 38 at 14.)

F.    Claims Against Defendant Judge Jerz

Davit attempts to assert the following claims against Judge Jerz under the RICO statute. Davit alleges that Judge Jerz conspired with the other Defendants to "commit . . . illegal actions against Davit" and "these illegal actions . . . encompassed illegal court rulings for medical benefits and payments for maintenance . . . ." (D.E. 38 at 15.)  Davit also alleges that Judge Jerz placed Davit in jail on three occasions based on "hearsay and without due process of law." (*Id.* at 16.) Davit contends that Judge Jerz's actions violated 18 U.S.C. §§ 1503 (influencing or injuring officer or juror generally), 1512 (tampering with a witness, victim, or an informant), 1513 (retaliating against a witness, victim, or an informant), 1951 (interference with commerce by threats or violence), and 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises). (*Id.*)

9

<u>ANALYSIS</u>

II.     Federal Rule 12(b)(1) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(1) provides a defendant a procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion can present either a facial or factual challenge to subject-matter jurisdiction. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc); *Friend v. Ancillia Sys., Inc.*, 68 F. Supp. 2d 969, 971 (N.D. Ill. 1999) (citing *Villasenor v. Indus. Wire & Cable, Inc.*, 929 F. Supp. 310, 312 (N.D. Ill. 1996)). Under either type of challenge, "[t]he burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus*, 322 F.3d at 946.

The Seventh Circuit instructs that different methods of review apply to facial and factual challenges to a district court's subject-matter jurisdiction. *See United Phosphorus*, 322 F.3d at 946 (discussing facial and factual challenges to subject-matter jurisdiction). When presented with a facial challenge, the Court "must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Villasenor*, 929 F. Supp. at 312 (citing *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)); *see also United Phosphorus*, 322 F.3d at 946. When presented with a factual challenge, the Court may "look beyond the jurisdictional allegations in the complaint[] and 'view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Friend*, 68 F. Supp. 2d at 971 (quoting *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also United Phosphorus*, 322 F.3d at 946.

III.    Federal Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a plaintiff has stated a claim for which relief may be granted. *See Johnson v. Rivera*, 272 F.3d 519, 520-521 (7th Cir. 2001). The motion will succeed only when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief.'" *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When reviewing a motion to dismiss for failure to state a claim, the Court accepts all of a plaintiff's well-pleaded facts as true and construes those facts in the plaintiff's favor. *See Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002). But the Court is not "required to accept as true legal conclusions or unsupported conclusions of fact," *id.* at 658, and the Court is not required to ignore facts alleged in the complaint that undermine a plaintiff's claim,[4] *see Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993).

The Defendants have moved to dismiss Davit's claims under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' 12(b)(1) motions challenge the subject-matter jurisdiction of this Court under the *Rooker-Feldman* doctrine, while their respective 12(b)(6) motions challenge the sufficiency of Davit's claims. Consequently, as a threshold matter, the Court must address the jurisdictional challenge before it can address the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998).

---

[4]    Furthermore, with respect to Davit's RICO claims, "allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a plaintiff to plead all averments of fraud with particularity." *Slaney v. In'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) (citing *Goren v. New Vision In'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998)).

IV.    Davit's Claims Are Barred by the *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine is a rule of federal jurisdiction." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004); *see also Lewis v. Anderson*, 308 F.3d 768, 771 (7th Cir. 2002) ("The *Rooker-Feldman* doctrine is jurisdictional in nature, and thus it may be raised at any time for the parties and by the court *sua sponte*."). The doctrine stems from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and it prohibits inferior federal courts, like this Court, subject to limited exceptions, from reviewing state court decisions. *See Crestview Vill. Apartments v. United States Dep't of Housing and Urban Dev.*, 383 F.3d 552, 555 (7th Cir. 2004). "At its core, the doctrine is a recognition of the principle that the inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996). In this regard, litigants that seek (or essentially seek) review of state court rulings must pursue their rights on appeal through state court appellate systems and, if unsatisfied with the outcome of those proceedings, seek review of appropriate issues in the United States Supreme Court. *See generally Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) (discussing appropriate avenues of review). Due to the jurisdictional nature of the *Rooker-Feldman* doctrine, this Court must issue an order under Federal Rule of Civil Procedure 12(b)(1) dismissing Davit's claims for lack of subject-matter jurisdiction to the extent that the Court determines that the doctrine applies to Davit's claims. *See Frederiksen*, 384 F.3d at 439; *see also* Fed. R. Civ. P. 12(h)(3).

Seventh Circuit precedent teaches that, "[t]o assess whether the *Rooker-Feldman* doctrine is applicable, 'the fundamental and appropriate question [for this Court] to ask is whether the

injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Crestview*, 383 F.3d at 556 (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). If the alleged injury "'resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction.'" *Id.* Similarly, if the purported federal injury is "inextricably intertwined" with the state court judgment such that the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, *Rooker-Feldman* bars the federal action. *See id.* (quoting *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993)) (internal quotations omitted); *see also Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003). With this analytical framework in mind, the Court turns to the *Rooker-Feldman* issue.

Each of the Defendants argue that the *Rooker-Feldman* doctrine bars Davit's RICO claims in this Court. The Court, generally speaking, agrees. (As discussed below, to the extent Davit may assert any claims that are not barred by the *Rooker-Feldman* doctrine—his pleadings are often convoluted and disjointed—those claims are patently insufficient to state RICO claims.[5]) At numerous points in the two documents comprising what Davit offers as his complaint, he alleges that various decisions by the Circuit Court of DuPage County were part of

---

[5]    Davit does not indicate that he is pursuing any other federal claims, and he has rejected attempts by at least one Defendant to characterize his claims as something other than RICO claims. For instance, the Village of Lisle, in what appears to be an abundance of caution, argued (despite the lack of such a claim in Davit's complaint) that any suit brought under 42 U.S.C. § 1983 would be barred by a two-year statute of limitations. (Def. Village of Lisle's Mot. to Dismiss First Am. Compl. (D.E. 44) ¶¶ 3-4.) In responding to this motion, Davit rejected the argument that his suit could be barred by the statute of limitations applicable to Section 1983 suits because the statute of limitations for RICO claims is four years. (Pl.'s Reply to the Mot. to Dismiss from Def. Village of Lisle (D.E. 49) ¶ 4.)

a RICO conspiracy against him.[6] Davit's RICO claims that stem from state court rulings,

however, are barred under the *Rooker-Feldman* doctrine, in that the alleged injuries for which

Davit seeks relief resulted from and are inextricably intertwined with the state court decisions

that he views as unfavorable to him. *See, e.g., Alpern v. Lieb*, 38 F.3d 933, 934 (7th Cir. 1994)

(holding that the plaintiff's suit against his former wife, her attorney, and the state judge who

pronounced the divorce was barred by, among other things, the *Rooker-Feldman* doctrine); *Hass*

*v. RICO Enter.*, No. 03-8695, 2004 WL 1385837, at *1 (N.D. Ill. Jun. 18, 2004) (stating that the

plaintiff's attempt to challenge the outcomes of his dissolution of marriage and child custody

proceedings under RICO and 42 U.S.C. § 1983 in federal court were barred by the *Rooker-*

*Feldman* doctrine); *Huszar v. Zeleny*, 269 F. Supp. 2d 98, 103 (E.D.N.Y. 2003) (holding that

plaintiff's RICO claim relating to plaintiff's ongoing state court divorce proceedings, among

---

[6]     *See, e.g.*, D.E. 1 at 10 (requesting a ruling from this Court that would, among other things, require Judge Equi to "reverse on all wrongful and illegal rulings"); *id.* (requesting that this Court reprimand Judge Equi for his handling of Davit's case); D.E. 38 at 7 (complaining of "an illegal judicial ruling from Judge Equi allowing maintenance payments"); D.E. 1 at 10 (alleging that Judge James Jerz "refuse[d] to hear the truth[] about the case"); *id.* (alleging that Judge James Jerz entered as illegal court order); *id.* at 11 (alleging that Judge Jerz "would continually over-ride the law and abuse his judicial powers"); *id.* (requesting this Court to reprimand Judge Jerz for his "illegal misuse of judicial powers"); D.E 38 at 6 (discussing "illegal rights" to the marital residence, child support, and maintenance); D.E. 1 at 5 (complaining of an allegedly "illegal [state family] court order" concerning maintenance payments for Mrs. Davit that she allegedly "was not entitle[d] to"); *id.* (discussing generally the "illegal actions of the court"); *id.* at 6 (alleging that Davit was incarcerated "based on a false charge and an illegal ruling" of the state courts); *id.* at 8 (alleging that Judge Equi "violated and misused his powers" as a judge in Davit's divorce case and "knowingly and illegally rule[d]" against Davit); *id.* at 9 (taking issue with Judge Equi's handling of Davit's divorce case and requesting that this Court enter judgment against Judge Equi for "willful and wrongful misconduct and abuse of his judicial powers"); *id.*, Ex. B (incorporated motion from state court proceedings that asked "to quash & vacate 'illegal' order of August 28, 2002 for payment of wife's 'maintenance' program"); *id.*, Ex. C (incorporated motion from state court proceedings demanding "correction of wrongful child support back payments of $25,000+").

other claims, was barred by the *Rooker-Feldman* doctrine); *Larrew v. Barnes*, No. 02-1585, 2003 WL 21458754, at *2 (N.D. Tex. May 7, 2003) (reasoning that "[a]lthough plaintiff purports to bring this action under the RICO statute, his claim is actually a collateral attack on the validity of his divorce decree and related child support orders" and holding that "[b]ecause plaintiff's RICO claim is 'inextricably intertwined' with his state divorce proceeding, federal jurisdiction is not proper"), *aff'd*, 87 Fed. Appx. 407 (5th Cir. 2004) (unpublished per curiam opinion).

In response to Defendants' motions based on the *Rooker-Feldman* doctrine, Davit has been forced to concede that this Court does not have subject-matter jurisdiction over claims seeking review of state court judgments. (Pl.'s Reply to the Mot. to Dismiss Defs. Judges Equi and Jerz (D.E. 52) at 1.) Recognizing this jurisdictional bar, Davit argues (notwithstanding the various allegations in his complaints cited above in note six) in his responses to the Defendants' motions to dismiss that he is not seeking to have this Court review prior state court orders.[7] Rather, Davit contends that the orders are evidence of RICO violations.[8] Davit's argument in this regard, however, is an unavailing exercise in semantics: the state court rulings of which Davit's complains are not "evidence" of anything, much less RICO violations, unless the Court were to entertain the possibility that those rulings were improperly entered against Davit. Entertaining that possibility, however, would effectively put this Court in the position of sitting

---

[7] *See, e.g.*, Pl.'s Reply to the Mot. to Dismiss from Def. Village of Lisle Mem. of Law (D.E. 49) at 2 ("Plaintiff argues that he [is] not seeking help to reverse [c]ourt orders . . . but rather to present evidence to the wrongful rulings set forth from the circuit court.").

[8] *See, e.g.*, Pl.'s Reply to the Mot. to Dismiss Defs. Judges Equi and Jerz (D.E. 52) at 1 ("Plaintiff seeks to clarify that . . . [he wants this Court] to weigh as evidence the state court judgments that laid the foundation for RICO Act charges . . . ."); Pl.'s Reply to the Notice of the Mot. to Dismiss Am. Compl. of Def. Joseph Glimco (D.E. 51) ¶ 5 ("State court rulings are used as evidence only to the RICO Act violations . . . .").

in appellate review of past and ongoing proceedings of the Circuit Court of DuPage County, Illinois—something the *Rooker-Feldman* doctrine prohibits.[9]

The crux of Davit's RICO suit is that Defendants Cathy Davit and Stogsdill convinced the Defendant-Judges that Davit had a secret stash of two million dollars. As a consequence, Davit alleges, the judges began to rule against Davit in hopes of acquiring some or all of the two million dollars for themselves. The fact that Davit points to the various state court rulings as "evidence" of RICO violations supports the conclusion that Davit's alleged injuries result from those rulings, and that he does not have a prior, independent claim which the Circuit Court of DuPage County failed to remedy. If the state proceedings had gone in Davit's favor many—if not effectively all—of the injuries that he alleges that he suffered in this suit would not have occurred. *See Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 534 (7th Cir. 2004) ("[Plaintiff's] injuries arose not from an independent violation of her rights but from the extrinsic fraud upon the state court and intentional deprivation of her property that she claims occurred due to that violation."); *Garry*, 82 F.3d at 1368 ("[I]f the plaintiffs had been able to avoid the state court's condemnation of the property, they would have had no federal action to bring."); *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 729 (7th Cir. 1993) ("[Plaintiff] did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment . . . ."). This conclusion is further supported by the Seventh Circuit teaching that the

---

[9]    For example, in his "Addendum" to his Affidavit of July 8, 2004, Davit explains that he "was and has been continually incarcerated by these flawed figures of delinquent child-support payments," that he has "contested these figures over and over to no avail," and accordingly "Plaintiff filed RICO Act violations against the said Defendants." (D.E. 56 at 3.)  This Court does not have the authority to sit over the family law courts of DuPage County, Illinois, to determine whether their rulings are correct.  An entire system of state appellate courts, and if appropriate, even review by the U.S. Supreme Court, are available to address such claims.

"focus upon injury at the hands of a state court is particularly apparent in cases where the federal plaintiff is actually suing the state court or state court judges." *Garry*, 82 F.3d at 1368 n.10. Accordingly, this Court concludes that it lacks subject-matter jurisdiction over Davit's claims under the *Rooker-Feldman* doctrine. As explained further below, to the extent that an extremely generous construction of Davit's twenty-nine page collective "complaint" might divine any putative claims that are not reached by the *Rooker-Feldman* doctrine, the Court finds that Davit's RICO claims fail under Rule 12(b)(6) for multiple, independent reasons.[10]

V.     Davit Has Failed to State Claims Under RICO

Even if the *Rooker-Feldman* doctrine did not present a threshold barrier to Davit's attempt to advance RICO claims in this Court (which it does), Davit has failed to state RICO claims sufficient to survive Federal Rule of Civil Procedure 12(b)(6). It appears that Davit has attempted to state claims against the Defendants under 28 U.S.C. § 1962(a)-(d). (*See* D.E. 38 at 3 ("All in violation of Title 18, United States Code, Section 1962(a-d).").) There are, however, several independent and alternative reasons why Davit's allegations are legally insufficient to state causes of action under the RICO statute.

A.     Section 1962(a) Claims

---

[10]     Although the Court need not rule on this issue, Davit's complaint is almost surely barred, in part, under the principles articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994), which teaches that a federal plaintiff cannot recover damages relating to an allegedly illegal sentence or conviction obtained in state court unless the "conviction or sentence has been reversed on direct appeal," "called into question by a federal court's issuance of a writ of habeas corpus," or otherwise invalidated by process of state law. *Id.* at 486-87. In his pleadings and other ancillary filings that purport to explain them, Davit complains of purported false testimony by his ex-wife in connection with his criminal conviction by a "jury of 12" for criminal "violation of an order of protection" and "resisting arrest from the Lisle Police Department." (D.E. 61 at 15-16.) This proceeding is apparently the subject of a pending criminal appeal in the state courts of Illinois. (*Id.* at 16.) These complaints appear to be clearly *Heck*-barred.

Section 1962(a) makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . ." 18 U.S.C. § 1962(a). To state a Section 1962(a) claim, Davit must allege "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999); *see also Morgan v. Bank of Waukegan*, 804 F.2d 970, 972-73 (7th Cir. 1986).

In assessing whether Davit has attempted to assert such a claim (and making this assessment tests the boundary between reading a *pro se* plaintiff's complaint generously and edging into a situation where the Court has improperly abandoned its neutral role to become a litigant's *ad hoc* counsel), the Court finds that Davit has failed to allege that any of the Defendants have utilized income received from a pattern of racketeering activity in the operation of the Circuit Court of DuPage County, which the Court will assume Davit has identified as the alleged enterprise in this case. And as set forth below, Davit has also failed to adequately plead a pattern of racketeering activity in that he has not properly pled predicate acts or a pattern related to them. *See, e.g., Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) ("[T]he Supreme Court has attempted to give definition to the pattern requirement to . . . prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law.") (collecting cases). To the extent that Davit has attempted to advance claims under 18 U.S.C. § 1962(a), those claims fail under Federal Rule of Civil Procedure 12(b)(6).

B.    Section 1962(b) Claims

Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . ." 18 U.S.C. § 1962(b). "A proper claim under this section must contain two allegations: (1) that Defendants acquired or maintained an interest in an enterprise through a pattern of racketeering activity; and (2) that Plaintiff suffered an injury through Defendants' acquisition or maintenance of the enterprise that is separate from the injuries that resulted from the predicate acts." *Xinos v. Kappos*, 270 F. Supp. 2d 1027, 1032 (N.D. Ill. 2003) (citations omitted). Davit has not alleged that the Defendants acquired or maintained any interest in the DuPage County Court system (nor would such an allegation even appear to be coherent), nor has he properly alleged any pattern of racketeering within the meaning of RICO case law. To the extent Davit has attempted to advance claims under Section 1962(b), Davits allegations fail to state a claim upon which relief can be granted.

C.    Section 1962(c) Claims

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). For Davit's Section 1962(c) claims to survive a motion to dismiss, the complaint must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

19

With respect to the first element, Seventh Circuit precedent teaches that in order for a

civil RICO defendant "to have conducted or participated in [an] enterprise's affairs under §

1962(c), the person charged must have had some part in directing those affairs." *Id.* at 598

(citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). "'In other words, [the defendant]

must have participated in the operation or the management of the enterprise itself, and [the

defendant] must have asserted some control over the enterprise.'" *Id.* (quoting *United States v.

Swan*, 224 F.3d 632, 635 (7th Cir. 2000)). Even if Davit has properly alleged that the Circuit

Court of DuPage County is a RICO "enterprise," Davit fails to allege, however, that any of the

Defendants exert any control over the Circuit Court of DuPage County. *See Slaney*, 244 F.3d at

580 ("[Plaintiff's] complaint contains no allegation that the [defendant], as an individual, had any

control over the enterprise itself.") Even if the Court were find that the Judge-Defendants could

perhaps be shown to participate in the operation or management of the DuPage Circuit Court

(which does Davit no practical good because, as explained further below, the Defendant-Judges

are clearly immune from Davit's allegations), the *Reves* defect means that the RICO claims

against the other defendants fail as a matter of law.

In addition, and independently, the RICO predicates that Davit identifies are often wholly

inapposite and, with all respect, verge at times on nonsensical because the criminal offenses they

purport to aver have no connection to the facts of this case as pleaded by Davit.

For instance, Davit's repeated reliance on 18 U.S.C. § 1503 ("Section 1503") is

misplaced. Section 1503 is a federal statute that makes it, among other things, unlawful to

"corruptly, or by threats or force, or by any threatening letter or communication, endeavor[] to

influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the

United States . . . ." 18 U.S.C. § 1503(a). This section only applies to acts that relate to proceedings in the federal court system. *See Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 843 (S.D.N.Y. 1991) ("The divorce proceeding was a state proceeding and therefore 18 U.S.C. § 1503 would not apply to any obstruction that may have occurred."); *see also O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990); *Pettiford v. Sheahan*, No. 02-1777, 2004 WL 626151, at *11 (N.D. Ill. Mar. 26, 2004) ("To constitute an offense under this statute, defendants' acts must relate to a proceeding in a federal court of the United States"). Davit does not allege that any of the Defendants interfered with a federal case—indeed, his RICO claims relate solely to his state court divorce proceedings—nor would Rule 11 appear to permit any such allegation. Davit, therefore, cannot rely on Section 1503 to establish an underlying predicate act for his RICO claims. *Pettiford*, 2004 WL 626151, at *11; *Albarran v. Peoples Gas Light and Coke Co.*, No. 89-9138, 1990 WL 141465, at *4 (N.D. Ill. Sept. 21, 1990).

Davit's reliance on 18 U.S.C. § 1510 ("Section 1510") and § 1511 ("Section 1511") is similarly misplaced. Section 1510 is a federal statute that makes it, among other things, unlawful to "willfully endeavor[] by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator . . . ." 18 U.S.C. § 1510(a). The statute defines a "criminal investigator" as an "individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States." 18 U.S.C. § 1510(c). Davit does not allege that any of the Defendants obstructed a federal criminal investigation nor does such an allegation appear possible. Accordingly, Davit cannot rely on Section 1510 to establish an underlying predicate act for his RICO claims. *See*

21

*Welch v. Wal-Mart Stores, Inc.*, No. 04-50023, 2004 WL 1510021, at *3 (N.D. Ill. July 1, 2004).

Davit faces a similar problem with Section 1511. Section 1511 is a federal statute that makes it unlawful "to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business . . . ." 18 U.S.C. § 1511(a). This statute is not remotely implicated by Davit's RICO claims—of the slew of allegations Davit makes against his ex-wife and her attorney, Davit's former attorney, state court judges involved in Davit's divorce proceedings, and the Village of Lisle, not one relates to an illegal gambling operation. Section 1511 is not available as a RICO predicate in this case. *See Welch*, 2004 WL 1510021, at *3.

Davit's reliance 18 U.S.C. § 1512 ("Section 1512") and § 1513 ("Section 1513") is also improper. Sections 1512 and 1513 are federal statutes that make unlawful tampering or retaliating against witnesses, victims, or informants. *See* 18 U.S.C. §§ 1512 (tampering), 1513 (retaliating). Both of these statutes require that the tampering or retaliation occur in connection with an "official proceeding," 18 U.S.C. §§ 1512(a)(1)(A)-(B), (a)(2)(A)-(B), (b)(1)-(2), (c)(1)-(2), (d)(1); 1513(a)(1)(A), (b)(1), or in connection with an individual providing certain types of information to a federal law enforcement officer or federal judge, *see* 18 U.S.C. § 1512(a)(1)(C), (a)(2)(C), (b)(3), (d)(2), as well as other acts not implicated in this case. Significantly, for purposes of Sections 1512 and 1513, an "official proceeding" is defined as a proceeding before various federal tribunals, Congress, federal agencies, and insurance regulatory officials. *See* 18 U.S.C. 1515(a)(1)(A)-(D). The term "law enforcement officer" is defined, with certain limitations not relevant here, as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government

as an adviser or consultant." 18 U.S.C. 1515(a)(4). The upshot of all of this is that both Section

1512 and 1513 relate to federal investigations, agents, and proceedings that are not implicated

here. Davit's complaint contains no allegations that would support his use of either of these

statutes to establish RICO predicates.

Davit also repeatedly alludes to the Hobbs Act, 18 U.S.C. § 1951. The Hobbs Act

criminalizes attempts to obstruct, delay, or affect interstate commerce by robbery or extortion;

"extortion" in the Hobbs Act is defined as "the obtaining of property from another, with his

consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under

color of official right." 18 U.S.C. 1951(b)(2). Davit's "extortion" theory is not particularly clear

(or perhaps even coherent), but as best the Court can tell, it involves the notion that orders issued

by force of law from the courts of Illinois have forced Davit, through various court rulings, to

incur legal liabilities in his divorce proceedings. (*See*, e.g., D.E. 1 at Count 6 ("That Mr.

Stogsdill, Judge Jerz, and the DuPage County court System, which they use against me, are

nothing more than an extortion and racketeering program of corruption and crime with the

DuPage Court System.").) Davit offers no authority to conclude that Congress intended that the

Hobbs and civil RICO Acts could be used to relitigate any and every state court

proceeding—including, notably, matters at the center of traditional state court authority such as

divorce, probate, and family law matters—based on the idea that the application of the rule of

law through state court orders and judgments could constitute a "wrongful" use of force or

official authority. Such a theory would potentially make every state court proceeding subject to

relitigation in federal court—an outcome that makes no sense at all.[11]

To the extent Davit has any RICO predicates that one might conclude survive a facial review (and again, this endeavor tests the boundary between reading a *pro se* litigant's pleadings generously and impermissibly becoming Davit's *ad hoc* counsel), they do not allege a "pattern" within the meaning of federal RICO jurisprudence. The Seventh Circuit has long counseled against rulings that will allow the RICO statute to be used to transfer every garden-variety common law fraud case into a federal case; or, as Judge Flaum explained in *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992), "RICO has not federalized every state common-law cause of action available to remedy business deals gone sour." That teaching is equally apt when assessing whether every disgruntled divorce court litigant should be able to relitigate such disputes in the federal courts.

With respect to assessing the pattern requirement in the context of civil RICO, the

---

[11]     Davit also refers to 18 U.S.C. § 1956, a federal statute criminalizing interstate travel in aid of racketeering. This statute also is inapposite, as no interstate travel is alleged or is apparent from the facts. Davit also alludes at times to "fraud" (*see, e.g.*, D.E. 1 at 2 ("I accuse the defendants so named in this RICO Act Violation[] of extortion, fraud, . . . and racketeering . . . .")), but common law fraud is not a RICO predicate, and any unspecified "fraud" predicates also independently fail because they have not been pleaded in accordance with Federal Rule of Civil Procedure 9(b). *See, e.g., Slaney v. Int'l Amateur Athletic Fed.*, 244 F.3d 580, 599 (7th Cir. 2001). Moreover, even if fraud predicates were properly pleaded under Rule 9(b) and Sections 1341 and/or 1343 of Title 18, they would not as presented constitute any cognizable "pattern" within the meaning of Seventh Circuit RICO jurisprudence. *See, e.g., Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024-1025 (7th Cir. 1992) (collecting cases). Davit also makes conclusory allusions to other putative statutes that have been violated without any meaningful explanation of how or why. This is insufficient: "[I]n pleading [RICO] predicate acts conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations." *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) (collecting cases).

Seventh Circuit has specifically instructed that "[t]he requirement of proving 'pattern' is central to the [RICO] statute." *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) (affirming dismissal of RICO complaint and stating that "defendants should not be put to the burden of litigating a RICO suit beyond the pleadings by allegations as thin as in this case"). In this regard, the Seventh Circuit has taught that "[a] criminal enterprise, as distinct from a normal enterprise that gets into trouble with the law from time to time, is an enterprise that *habitually* resorts to illegal methods of doing business." *Id.* (emphasis in original). Nothing in Davit's vitriolic complaints gives any basis, even taking his allegations as true, that one could possibly conclude that the *habitual business* of the Circuit Court of DuPage County, Illinois, is criminal activity. (Certainly Davit does not even allege that any of the rulings affecting him were reversed on appeal as erroneous by the Illinois appellate courts; but that deficiency simply reinforces why this action as framed also presents an improper request for review and *de facto* undoing of the rulings of the state courts of Illinois.)[12]

For all of these reasons, Davit's Section 1962(c) RICO claims are flawed for multiple, independent reasons. If this Court had jurisdiction over these claims, they would need to be dismissed pursuant to Rule 12(b)(6).

D.    Section 1962(d) Claims

Section 1962(d) makes it unlawful for "any person to conspire to violate any of the

---

[12]    In this regard, the RICO activities alleged by Davit, to the extent there are *any* cognizable RICO predicates at all, involve a limited number and very limited variety (i.e., close to zero or zero in number) of predicates. There is one central victim (*i.e.*, Davit), and one resultant set of harms centrally visited on him. None of these factors militate in favor of a finding that Davit has adequately alleged a cognizable RICO pattern. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024-25 (7th Cir. 1992) (collecting cases).

provisions of subsection (a), (b), or (c) [of Section 1962]." 18 U.S.C. § 1962(d). Davit alleges—in what appears to be a boilerplate passage copied from a grand jury indictment—that "the [D]efendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise." (D.E. 38 at 2.) Davit's complaint is not saved by his attempted invocation of Section 1962(d). The defects in his Section 1962(c) claim noted above apply equally to his Section 1962(d) claim. This is particularly true because a civil RICO litigant cannot recover under Section 1962(d) simply by alleging that he was harmed by an alleged RICO conspiracy; instead, he must allege that he was harmed by a legitimate, cognizable RICO predicate—*see, e.g., Beck v. Prupis*, 529 U.S. 494, 507 (2000)—so all of the facial defects in the aforementioned putative RICO predicates again undercut any viable RICO conspiracy claim. *Accord, e.g., Hexagon Packaging Corp. v. Manny Gutterman & Assocs., Inc.*, 120 F. Supp. 2d 712, 719 (N.D. Ill. 2000). In addition, and independently, the RICO conspiracy allegation is defective because it contains nothing more than generic and conclusory allegations of a conspiracy directed against Davit. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 733 (7th Cir. 1998) (noting that it is well established that a RICO conspiracy claim "may be dismissed if it contains only conclusory, vague, and general allegations of a conspiracy"). In sum, Davit's RICO conspiracy allegation fails for the same reasons and more (*see Goren, supra*) as his substantive RICO claims.

VI.     The Defendant-Judges Are Immune from Suit

Even if Davit's claims against the Defendant-Judges were not barred by the *Rooker-Feldman* doctrine, which they are, and even if Davit has properly stated a cause of action against the Defendant-Judges under RICO, which he has not, Davit's claims against the Defendant-

26

Judges fail due to the doctrine of absolute judicial immunity.

The Defendant-Judges argue that Davit's claims against them should be dismissed because the doctrine of absolute judicial immunity shields them from liability. (Defendant-Judges Mem. in Supp. of Their Mot. to Dismiss the Compl. (D.E. 43) at 4-5.) In this regard, the Defendant-Judges argue that Davit's factual allegations demonstrate that they were acting in their official capacities as judges of the Circuit Court of DuPage County. (*Id.* at 5.) Davit responds by arguing that the doctrine of judicial immunity does not apply here because Judges Equi and Jerz did "conspire and rule beyond their jurisdictional capacity, especially in the positioning and wrongful incarceration acts." (Pl.'s Reply to the Mot. to Dismiss Defs. Judges Equi and Jerz (D.E. 52) at 2; *see also id.* at 3 ("[The judges] went beyond their [j]urisdictional capacities and therefore should be denied immunity . . . .").)

As a threshold matter, the Court notes that Judge Robert Gettleman summarily dismissed the claims that Davit asserted against Judges Equi and Jerz in Davit's initial complaint on the ground that the judges were immune from suit.[13] (*See* D.E. 20 ("Motion of defendants Judge Rodney Equi and Judge James Jerz is granted [19-1] as they are immune.").) Davit has "reaffirm[ed]" the allegations in his initial complaint in his first amended complaint, presumably incorporating his initial allegations into his first amended complaint. (D.E. 38 at 17.) By reasserting claims against the Defendant-Judges that Judge Gettleman previously dismissed, Davit has triggered a "variant of the law of the case doctrine that relates to the re-examination of a prior ruling by a different member of the same court." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997). Precedent teaches that "the presumption [in such cases] is that earlier rulings

---

[13]     This case was transferred from Judge Gettleman to Judge Filip on March 3, 2004.

will stand." *Id.* The "doctrine in these circumstances reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean" revisiting decisions made in the case—decisions upon which the case has proceeded (and upon which the parties have relied). *Id.* Recognizing this presumption, the Court turns to the issue of whether the Defendant-Judges are shielded by the doctrine of absolute judicial immunity and concludes, as did Judge Gettleman, that they are.

Seventh Circuit case law has repeatedly recognized "'the fundamental principle that judges are entitled to absolute immunity from damages for their judicial conduct.'" *Synder v. Nolen*, 380 F.3d 279, 286 (7th Cir. 2004) (quoting *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (collecting Supreme Court authority)). This principle "'is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Id.* (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-436 (1993)). The Seventh Circuit instructs that a judge "will be entitled to absolute judicial immunity if [the judge's] actions meet a two-part test: first, the acts must be within the judge's jurisdiction; second, these acts must be performed in the judge's judicial capacity." *John v. Barron*, 897 F.2d 1387, 1391 (7th Cir. 1990). If this test is met, "a judge will not be deprived of immunity even if the [complained of] action was in error, was done maliciously, was in excess of [the judge's] authority, and even if [the judge's] exercise of authority is flawed by the commission of grave procedural errors." *C.A. Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-357, 359 (1978)).

Two exceptions (which appear to be corollaries of the two-prong test identified

28

immediately above) exist to the rule that judges are absolutely immune from suits for damages, neither of which is applicable here. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam). First, judges are not immune from suits that challenge an action that is not judicial in nature. *Id.* at 11. Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. With regard to this second exception, Seventh Circuit precedent teaches that the relevant inquiry is whether the judge in question had subject-matter jurisdiction over the dispute. *See Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) ("What matters for immunity . . . is subject-matter jurisdiction.") (citing *Stump*, 435 U.S. at 349). If the defendant-judge at issue "had subject-matter jurisdiction and played a judicial role," the doctrine of absolute judicial immunity applies. *Id.*

Davit makes a variety of allegations against the Defendant-Judges. These allegations, however, are directed at the judges in their capacity as judicial officers presiding over his divorce and related maintenance (and perhaps contempt) proceedings. (*See, e.g.*, D.E. 38. at 13 (alleging Judge Equi "looked the other way on incriminating evidence"); *id.* (alleging Judge Equi aided and assisted Defendant Stogsdill such that "justice would be ignored and completely uninhibited [sic] throughout the divorce proceedings"); *id.* at 14 (Judge Equi "continually admonish[ed] Davit] . . . [throughout] the course of the divorce proceedings"); *id.* at 15 (Judge Jerz made "illegal court rulings for medical benefits and payments for maintenance in gross"); *id.* at 16 (Judge Jerz illegally incarcerated Davit "during the course [of] hearings"). Therefore, the first prong of the test set out above has been met.

Nor is there any serious argument that the Defendant-Judges were operating without subject-matter jurisdiction. The Defendant-Judges are clearly and concededly members of the

Circuit Court of DuPage County, Illinois. (*See, e.g.*, D.E. 1, Ex. A-C (copies of various motions

Davit filed in connection with his divorce and family proceedings with the Defendant-Judges in

the Circuit Court of DuPage County, Illinois).) The Circuit Court of DuPage County, Illinois, as

one of the circuit courts of the state of Illinois, has original subject-matter jurisdiction over all

justiciable matters, subject to limited exceptions not applicable here. *See generally Employers*

*Mut. Cos. v. Skilling*, 644 N.E.2d 1163, 1165 (Ill. 1994) (citing Ill. Const. 1970 art. VI, § 9); *In re*

*Marriage of Devick*, 735 N.E.2d 153, 157 (Ill. App. Ct. 2000) ("The trial court judge in a

domestic relations division [in the Circuit Court of DuPage County] has jurisdiction to hear all

issues that are justiciable in nature."); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 704

(1992) (stating that "state courts are more eminently suited to work of this type than are federal

courts, which lack the close association with state and local government organizations dedicated

to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees");

*In re Burrus*, 136 U.S. 586, 593-594 (1890) ("The whole subject of the domestic relations of

husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the

United States."). In this regard, the Court notes that the power to punish and sanction for

contempt of court is inherent in courts. *See, e.g., Murneigh v. Gainer*, 685 N.E.2d 1357, 1365

(Ill. 1997) (noting that "power of contempt is inherent in the judiciary, and vital to its authority");

*In Interest of Johnson*, 480 N.E.2d 520, 529 (Ill. App. Ct. 1985) ("All courts are vested with an

inherent power to punish for contempt as an essential incident to the maintenance of their

authority and the proper administration and execution of their judicial powers.") (collecting

cases). Otherwise a recalcitrant litigant could flout the authority of the Court without fear of

retribution and to the great of harm of his or her former spouse and children—for example, if the

disgruntled litigant was refusing to pay health care coverage for obligees. *See, e.g., Murneigh*, 685 N.E.2d at 1365 ("A unique and integral part of the judicial role in resolving specific controversies is the contempt authority, which imbues the judiciary with the power to punish certain types of conduct, i.e., acts which significantly interfere with the dignity of the court or acts which defy court orders.") (collecting cases).

Davit also repeatedly asserts that the Defendant-Judges did not afford him due process or otherwise overstepped the bounds of the law. Precedent teaches that this sort of (garden-variety) allegation does not disable the force of absolute judicial immunity where, as here, the judge in question was properly vested of the subject matter of the dispute. *See C.A. Brokaw*, 235 F.3d at 1015 (citing *Stump*, 435 U.S. at 359)). A litigant like Davit who believes a judge's rulings are wrong, or ill-conceived, or even fail to comport with due process may appeal those rulings, but he cannot sue the judge who rendered them.

As set forth above, the relevant inquiry for purposes of the judicial immunity issue presented here is whether the Defendant-Judges had subject-matter jurisdiction over Davit's divorce and related proceedings. *See Homola*, 59 F.3d at 651. They did. And Davit's general allegations that the Judge-Defendants conspired with Defendant Stogsdill are insufficient to overcome the protection of judicial immunity. *See C.A. Brokaw*, 235 F.3d at 1015 (citing *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990)). In sum, the Defendant-Judges "had subject-matter jurisdiction and played a judicial role" in Davit's divorce and related proceedings. *Homola*, 59 F.3d at 651. That is enough for the doctrine of absolute judicial immunity to shield the Defendant-Judges here. *Id.* Accordingly, this Court joins with Judge Gettleman in holding that Davit's claims against the Defendant-Judges are barred by the doctrine of absolute judicial

immunity. Davit has, therefore, failed to state claims against the Defendant-Judges upon which relief can be granted, which failure warrants dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Williams v. Faulkner*, 837 F.2d 304, 307 n.5 (7th Cir. 1988) (noting dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where defendant is immune from suit); *Maus v. Curran*, 945 F. Supp. 1217, 1219 (E.D. Wis. 1996).

VII.    The Court Dismisses the Claims Against Defendants Cathy Davit and William Stogsdill

An attorney for putative Defendant William Stogsdill has expressed Stogsdill's belief that he was not properly served by Davit and therefore cannot be held liable under the complaint. (*See* Tr. of March 22, 2004, hearing on Davit's motion for default.) Cathy Davit has appeared personally in court and emotionally expressed her inability to procure counsel because she is short of funds—which she explained is a product of Davit's failure to make support payments (the apparent source of his repeated contempt sanctions in state court). (*Id.*)

The Court need not resolve whether Davit has (as the state courts have apparently found) failed to make appropriate support payments to conclude that, under the circumstances of this case, dismissal of claims against Cathy Davit and Stogsdill is appropriate. The Court dismisses the claims against Cathy Davit and Stogsdill for reasons explained at length above. A court always can dismiss *sua sponte* for lack of appropriate subject-matter jurisdiction, and "*[s]ua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997); *accord, e.g., Apostol v. Landau*, 957 F.2d 339, 342-343 (7th Cir. 1992) (same). In this regard, commonsense and a sense of fairness dictates that this Court must appreciate that "'[a]t some point, our solicitious treatment of *pro se* litigants" must be balanced with "the rights of

32

Defendants to be free of scandalous, repetitive, and baseless claims that undoubtedly drain their financial and emotional resources.'" *Hass v. RICO Enterp.*, No. 03-8695, 2004 WL 1385837, at *6 (N.D. Ill. June 18, 2004) (quoting *Sato v. Kwasny*, No. 93-0037, 1993 WL 460842, at *3 (N.D. Ill. Nov. 5, 1993)); *see also Jennings v. Emry*, 910 F.2d 1434, 1441 (7th Cir. 1990) (dismissing convoluted RICO claim and teaching that review of motion to dismiss is not "a mandate to countenance balderdash."). There is no reasonable basis to allow Davit to continue to engage in the obvious harassment that he has attempted to visit upon his ex-wife through a suit that is so fundamentally flawed. Accordingly, Davit's claims against Cathy Davit and Stogsdill are also dismissed.

## CONCLUSION

For the foregoing reasons, Davit's suit is dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004). To the extent that Davit's twenty-nine page collective pleading might state some alleged wrongs that do not implicate the *Rooker-Feldman* doctrine, Davit's RICO claims are defective as a matter of law for multiple, independent reasons, and Davit's claims against Judge Equi and Judge Jerz are also dismissed independently under the doctrine of absolute judicial immunity.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: *November 18, 2004*

34